## IN THE UNITED STATES DISTRICT COURT
## FOR MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

SNODGRASS-KING PEDIATRIC DENTAL ) 
ASSOCIATES, P.C. and DAVID J. ) 
SNODGRASS, D.D.S., ) 
                     ) 
      Plaintiffs, ) 
                     ) 
v. )      Case No. 3:14-cv-654
                     )      Senior Judge Haynes
                     ) 
DENTAQUEST USA INSURANCE CO., INC., ) 
et al., ) 
                     ) 
      Defendants. ) 

## MEMORANDUM

Plaintiffs Snodgrass-King Pediatric Dental Associates, P.C. ("Snodgrass-King"), a Tennessee

corporation, and David J. Snodgrass, D.D.S., a Tennessee ctizen, filed this action under 42 U.S.C.

§ 1983 against the Defendant DentaQuest USA Insurance Company, Inc. ("DentaQuest USA").[1]

Plaintiffs assert claims for retaliation for their criticisms and legal actions against DentaQuest USA's

affiliates in violation of their First Amendment rights of free speech and their rights under the Due

Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs' claims arise out of

the Defendant's exclusion of Plaintiffs from participation in Tennessee's Medicaid program that

provides dental services to eligible citizens. Plaintiffs also assert a violation of the federal Medicaid

statute for the Defendant's discrimination against Plaintiffs. Plaintiffs also assert claims for violation

of Article I, Section 8 of the Tennessee Constitution, the state's equal protection provisions.

---

[1] Plaintiffs' original complaint included state officials, but Plaintiffs nonsuited the State defendants (Docket Entry No. 38) and, on May 20, 2014, the Court dismissed Plaintiffs' claims against those parties without prejudice. (Docket Entry No. 40).

Plaintiffs' other state law claims are for the unlawful delegation of State authority to Defendant DentaQuest USA to determine Medicaid participation, as well as for breach of contract and the duty of good faith and fair dealing. In essence, Plaintiffs allege that, due to Plaintiffs' long-standing and contentious relationship with DentaQuest USA's affiliates, DentaQuest USA intentionally excluded Plaintiffs from Tennessee's Medicaid dental provider network. Plaintiffs seek compensatory and punitive damages as well as declaratory judgment and injunctive relief to restore Plaintiffs to the TennCare dental provider network.

Before the Court are Defendant DentaQuest USA's motion to dismiss under Fed. R. Civ. P.12(b)(6) (Docket Entry No. 24) and motion to dismiss under Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 (Docket Entry No. 56). In sum, the Defendant contends: (1) that for their First Amendment claims, Plaintiffs fail to allege any speech critical of DentaQuest USA and refer only to its criticism of DentaQuest Tennessee, its independent affiliate; (2) that Plaintiffs' past conduct is so remote in time to lack any causal connection to Defendant's alleged retaliatory act; (3) that, as to their procedural due process claim, Plaintiffs do not possess a constitutionally protected interest in participating in the TennCare dental benefits program; (4) that, for Plaintiffs' equal protection claim, Plaintiffs fail to allege both sufficient facts to overcome the legal presumption of rationality for DentaQuest USA's selection of TennCare's network providers and sufficient facts that Plaintiffs were treated differently than other similarly situated dental providers; (5) that Tennessee law grants the State Commissioner for Tennessee's Medicaid program the express authority to delegate the selection of dental providers; (6) that because Plaintiffs lack a contract with the Defendant that was not a party to any settlement agreement, Plaintiffs' state-law claims for breach of contract or duty of good faith and fair dealing fail as a matter of law; and (7) that Plaintiffs' voluntary dismissal of

2

their claims against the State Defendants precludes any relief for lack of an indispensable party required by Rule 19.

In response, Plaintiffs assert, in essence: (1) that their First Amendment claims are supported by specific facts that establish a plausible claim of retaliation and that the settlement agreement with DentaQuest USA's affiliate expressly applied to DentaQuest USA's affiliate's successors and assigns to the administration of the Tennessee's Medicaid dental program; (2) that for their equal protection claims, Plaintiffs allege specific facts of the parties' longstanding acrimonious relationship for a class of one claim and the lack of a rational basis for Defendant's exclusion to show an impermissible discrimination against multi-location dental providers for which temporal proximity is not a prerequisite; (3) that federal Medicaid law, 42 U.S.C. § 1396u-2, prohibits discrimination against providers that serve high risk populations and creates an enforceable property interest; (4) that, for their due process claims, both Plaintiffs' prior longstanding participation as a dental provider and Tenn. Code Ann. § 71-5-118's imposition of sufficient restraints on governmental administration of Tennessee's Medicaid providers, creates an enforceable property interest; (5) that, under Tennessee law, DentaQuest USA's contract lacks sufficient safeguards to qualify as a proper delegation of State officials' authority; and (6) that the State officials are not indispensable parties, as relief can be afforded without State officials who elected not to intervene in this action and whose interests are represented by DentaQuest USA.

For the reasons set forth below, Defendant DentaQuest USA's motions to dismiss (Docket Entry Nos. 24 and 56) are granted as to Plaintiffs' equal protection claim, but otherwise denied.

# I. Analysis of the Complaint

Plaintiff Snodgrass-King provides pediatric dental, orthodontic, general dental, and oral surgery services. (Docket Entry No. 1, Complaint, at ¶ 1). Snodgrass-King has dental care offices in Davidson County, Williamson County, Rutherford County, Wilson County, and Maury County, Tennessee. Id. Dr. Snodgrass has been practicing in Tennessee since 1984 and, in 1986, was board-certified as a specialist in pediatric dentistry. Id. at ¶ 2. Plaintiff David J. Snodgrass, currently practices pediatric dentistry at Snodgrass-King. Id.

Since 1994, Plaintiff Snodgrass-King has provided dental care to TennCare enrollees and have served over 12,000 TennCare enrollees. Id. at ¶ 27, 61. Plaintiffs describe the majority of their TennCare patients as members of high-risk populations with very poor dental health requiring costly treatments that other providers are not as well equipped to provide given the skills and costs to render such services. Id. at ¶¶ 65–67. Plaintiffs allege that, since their exclusion from Tennessee's Medicaid program, many of their former TennCare patients have reported to Plaintiffs that they have been unable to find new TennCare dental providers willing to treat their specialized and costly conditions. Id. at ¶ 69. Except in emergency situations, dental providers in Tennessee cannot receive reimbursement for dental services rendered to TennCare enrollees unless the provider is approved for TennCare's provider network formed by DentaQuest USA. Id. at ¶ 18.

Defendant DentaQuest USA is a Texas insurance corporation with its principal office in Mequon, Wisconsin. Id. at ¶ 3. DentaQuest Tennessee is a Texas corporation. (Docket Entry Nos. 24-1, 24-2). DentaQuest USA concedes that DentaQuest Tennessee is its affiliate, but represents that DentaQuest USA is not a successor in interest to DentaQuest Tennessee. (Docket Entry No. 25, Memorandum of Law in Support of Motion to Dismiss at ¶ 9). In 2004, DentaQuest Tennessee

acquired Doral Dental of Tennessee, LLC ("Doral Dental"), then a subsidiary of Doral Dental USA, LLC. (Docket Entry No. 1, Complaint at ¶ 30). In 2010, Delta Dental of Tennessee replaced DentaQuest Tennessee as TennCare's dental benefits manager. Id. at ¶ 57. Plaintiffs were members of the TennCare dental provider network during the entirety of Delta Dental's management of the network, from 2010 until May 2013. Id. at ¶¶ 58-59.

In 1998, Doral Dental was the administrator of BlueCross BlueShield of Tennessee's TennCare dental program. Id. at ¶ 31. In 2002, Doral Dental became the sole manager of TennCare's dental program. Id. Since 1998, Plaintiffs allege that Dr. Snodgrass was a highly vocal critic of Doral Dental's administration of the TennCare dental program. Id. Dr. Snodgrass's primary complaints against Doral Dental of Tennessee concerned failure to reimburse certain dentists within the provider network, while fully reimbursing other dentists in the TennCare network. Id. at ¶ 35. Between 1998 and 2003, Dr. Snodgrass initiated a letter-writing campaign complaining of Doral Dental's contracting processes and reimbursement practices, including contacts with members of the Tennessee General Assembly, TennCare officials, and various other state officials involved with the TennCare program. Id. at ¶¶ 32– 42.

According to Plaintiffs, in 2003, Dr. Snodgrass's public complaints led Doral Dental to wrongfully remove him from the TennCare dental provider network. Id. at ¶ 41. When large numbers of Dr. Snodgrass's patients complained to the TennCare Bureau, TennCare's Dental Director initiated an investigation of Dr. Snodgrass by the Tennessee Bureau of Investigation ("TBI"), but the investigation concluded in 2004 without any finding of criminal wrongdoing by Dr. Snodgrass. Id. at ¶¶ 42–45. During 2004, DentaQuest Tennessee acquired Doral Dental.

In 2008, Dr. Snodgrass filed an action against DentaQuest Tennessee for the above controversies and, in 2009, Plaintiffs and DentaQuest Tennessee executed a confidential settlement agreement that Plaintiffs assert includes a provision that the agreement was "binding" on Doral Dental's "successors and assigns." Id. at ¶¶ 46-49; see also Docket Entry No. 1-5, Confidential Settlement Agreement at ¶ 13. Plaintiffs allege that, in this agreement, DentaQuest Tennessee waived its right to terminate any Snodgrass-King provider from the dental network without cause. (Docket Entry No. 1, Complaint at ¶ 48). In 2010, Dr. Snodgrass filed a second action in this Court against DentaQuest Tennessee, the Tennessee Department of Finance and Administration ("TDFA"), and the TennCare Bureau that settled in 2011 with another confidential settlement agreement requiring DentaQuest Tennessee to make a monetary payment to Dr. Snodgrass. Id. at ¶¶ 55-56.

In May 2013, on behalf of the State, the TDFA, and the TennCare Bureau, the TDFA Commissioner executed a contract with DentaQuest USA to create and administer the statewide TennCare dental provider network that is to provide all covered dental services to TennCare enrollees. Id. at ¶ 16. Upon assuming management of TennCare's dental program in 2013, DentaQuest USA required all members of the existing TennCare dental provider network to reapply to remain in the network. Id. at ¶ 19. Plaintiffs had been longstanding members of the previous TennCare dental network. Id. at ¶ 27. Snodgrass-King and its dentists, including Dr. Snodgrass, reapplied to remain in the network. Id. at ¶ 20. On December 15, 2013, Dr. Snodgrass received a letter from DentaQuest USA informing him that neither he nor any of Snodgrass-King's offices nor any of the dentists employed by Snodgrass-King would be included in the network. (Docket Entry No. 1-2, December 15, 2013 Letter). DentaQuest USA's letter did not cite a reason for its decision and advised Plaintiffs that there was not any right to appeal the decision. Id.

Plaintiffs requested reconsideration of this denial and, by letter dated January 14, 2014, DentaQuest USA declined stating that "Snodgrass-King's offices and providers were not selected for that network," and noting that "DentaQuest's contract with TennCare limits DentaQuest's capacity to include in its network more than one location of a dental practice which, like Snodgrass-King, operates multiple practice locations." (Docket Entry No. 1-3, DentaQuest USA Letter at 1). DentaQuest USA's contract with TennCare includes a Multiple-Location Restriction ("MLR") provision that provides as follows:

> Credentialing of providers with multiple service locations - Except for public health or accredited schools of dentistry in Tennessee, **no entity owning or operating multiple practice locations nor any individual provider nor group of providers operating multiple practice locations, may be credentialed by the Contractor at more than one location at the time of the initial credentialing by the Contractor.** All requests for satellite office credentialing will be based upon proven delivery of good quality dental care at the initial location and subject to careful individual review of the new location's dentist, dental associates, and entire dental staff. **The requirement of one initial location may be waived, at the sole discretion of the Contractor, only for providers in good standing who are current TennCare providers, with a proven record of delivery of quality dental care, at the time of the Contract start date.**

(Docket Entry No. 1-1, TennCare-DentaQuest Contract at 39) (emphasis added).

Plaintiffs requested the TennCare Bureau review their exclusion from TennCare's dental provider network and, by letter dated January 27, 2014, TennCare informed Plaintiffs that TennCare is not involved in selecting providers, citing its contract with DentaQuest USA to administer the TennCare dental benefit. (Docket Entry No. 1-4, January 27, 2014 Letter at 1-2). According to this letter, this contract authorized DentaQuest to set the minimum requirements for participation in the TennCare dental network and the terms of provider agreements as well as the criteria for

DentaQuest's selction of dental providers. Id. As to Plaintiffs' non-selection, TennCare's letter reads:

> ". . . TennCare has no information regarding the reasons for the DentaQuest decision as it has no role in the process. Although not directly responsive to your request, **please note that § A.55 of the Contract prohibits credentialing, at the time of initial credentialing, more than one location of an entity that operates multiple practice locations.**"

Id. at 2 (emphasis added).

Plaintiffs allege that the MLR was a new requirement for providers for the TennCare dental network and was not in prior contracts between TennCare and the dental managed care corporations responsible for creating and implementing the TennCare dental services. (Docket Entry No. 1, Complaint at ¶ 25). Plaintiffs further allege that the "Defendants crafted and/or have selectively enforced the Multiple-Locations Restriction with the specific intent of excluding Plaintiffs from the TennCare dental provider network. DentaQuest has included many other providers and entities owning or operating multiple office locations in the TennCare dental provider network." Id. at ¶ 80.

Plaintiffs allege that, as a result of being excluded from TennCare's dental provider network, Snodgrass-King had to terminate approximately thirty percent of its staff and that other long-term employees have since accepted other employment for fear of possible termination. Id. at ¶ 29. Plaintiffs allege that DentaQuest USA's act of exclusion has damaged Plaintiffs financially, including deprivation of the revenue from treating TennCare patients as well as emotional distress, reputational damage, and other non-economic injury. Id. at ¶ 72.

### B. Conclusions of Law

"[A] civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (citation omitted). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id. at 903 (citations and quotation marks omitted).

In Iqbal, the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. Rule Civ. Proc. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops

short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d. Cir. 2007). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

556 U.S. at 677-79.

As a general rule, "[a] motion under Rule 12(b)(6) is directed solely to a complaint itself . . ." Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1971). Yet, under Fed. R. Civ. P. 10(c), any matters attached to the pleadings are considered part of the pleadings as well as documents that are referred to in the complaint or are "central" to the claim. Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); see also Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999); Katt v. Titan Acquisitions, Ltd., 133 F. Supp.2d 632, 637 (M.D. Tenn.2000) (citing Nieman v. NLO, Inc., 108 F.3d 1546, 1555 (6th Cir. 1997)). Such submissions do not convert a motion to dismiss into

a motion for summary judgment, where the evidence consists of proceedings in other courts of record, Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir.1980), or the documents' contents are alleged in the plaintiff's complaint without any challenge to their authenticity, Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), and the extrinsic material does not rebut, challenge, or contradict anything in the plaintiff's complaint. Song v. City of Elyria, Ohio, 985 F.2d 840, 842 (6th Cir. 1993); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 n. 23 (3d ed.).

Here, the Court will consider the documents attached to Plaintiffs' complaint, and the corporate records and settlement agreement attached to the Defendant's motion, without converting these motions into a motion for summary judgment because the extrinsic material considered by the court consists of documents that fall into these categories.

For their Section 1983 claims, Plaintiffs must allege plausible facts that the Defendant's alleged acts were committed under color of state law and deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Here, by virtue of its contract with the State to administer the State's Medicaid plan, TennCare, the Court concludes that DentaQuest and its affiliates were acting under color of state law at the time of the acts alleged in Plaintiffs' complaint. West v. Atkins, 487 U.S. 42, 50-53 (1988).

### 1. Plaintiffs' First Amendment Claims

Plaintiffs' First Amendment claims are that DentaQuest USA retaliated against Plaintiffs for their prior criticisms about, and legal actions against, DentaQuest Tennessee and its predecessor that are Dentaquest's affiliates. In Board of County Comm'rs, Wabaunsee County, Kan. v. Umbehr, 518

U.S. 668 (1996), the Supreme Court extended First Amendment protection to public contractors that

allege claims of retaliatory termination of their contracts:

> In sum, neither the Board nor Umbehr have persuaded us that there is a "difference of constitutional magnitude," Lefkowitz, 414 U.S., at 83, 94 S.Ct., at 324, between independent contractors and employees in this context. Independent government contractors are similar in most relevant respects to government employees, although both the speaker's and the government's interests are typically—though not always—somewhat less strong in the independent contractor case. We therefore conclude that the same form of balancing analysis should apply to each.

> Because the courts below assumed that Umbehr's termination (or nonrenewal) was in retaliation for his protected speech activities, and because they did not pass on the balance between the government's interests and the free speech interests at stake, our conclusion that independent contractors do enjoy some First Amendment protection requires that we affirm the Tenth Circuit's decision to remand the case. To prevail, Umbehr must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him. If he can make that showing, the Board will have a valid defense if it can show, by a preponderance of the evidence, that, in light of their knowledge, perceptions, and policies at the time of the termination, the Board members would have terminated the contract regardless of his speech. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Board will also prevail if it can persuade the District Court that the County's legitimate interests as contractor, deferentially viewed, outweigh the free speech interests at stake. And, if Umbehr prevails, evidence that the Board members discovered facts after termination that would have led to a later termination anyway, and evidence of mitigation of his loss by means of his subsequent contracts with the cities, would be relevant in assessing what remedy is appropriate.

> Finally, we emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.

> Subject to these limitations and caveats, however, we recognize the right of independent government contractors not to be terminated for exercising their First Amendment rights. The judgment of the Court of Appeals is, therefore, affirmed, and the case is remanded for proceedings consistent with this opinion.

Id. at 684-86.

In Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd., 276 F.3d 876 (6th Cir. 2002), the Sixth Circuit emphasized the requirement of a preexisting contractual relationship with the public entity:

> The Supreme Court in Umbehr was careful to note the "limited nature" of its decision, stating that, because the plaintiff's lawsuit "concern[ed] the termination of a **pre-existing commercial relationship** with the government, [the Court did] not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." Id. at 685, 116 S.Ct. 2342 (emphasis added). When, as here, there is not a pre-existing commercial relationship between the state and the bidder or applicant for a government contract, the balance falls even more in favor of the state. See McClintock v. Eichelberger, 169 F.3d 812, 815–17 (3rd Cir. 1999), cert. denied, 528 U.S. 876, 120 S.Ct. 182, 145 L.Ed.2d 154 (1999) (noting, in circumstances similar to those presented in this case, that the balancing test called for by Umbehr and O'Hare was too strict, because the plaintiff did not have a pre-existing, ongoing contractual relationship with the state). In fact, at least one district court has applied McClintock and concluded that, when there is "no such ongoing commercial relationship, there is no First Amendment protection and thus in the absence of such a relationship, a cause of action is not recognized for failure to award a contract in retaliation for exercise of one's First Amendment rights." Halstead v. Motorcycle Safety Foundation Inc., 71 F. Supp.2d 464, 473–74 (E.D. Pa. 1999).

Id. at 882.

As applied here, prior to DentaQuest USA's new requirements for participation in TennCare's dental network, Plaintiffs had a longstanding contractual relationship as a provider in

TennCare's dental network. Thus, the Court concludes that Plaintiffs' claims concerning retaliation for non-renewal of its participation in the TennCare dental network, fall within the protection of the First Amendment.

Plaintiffs must next allege plausible facts that: (1) they engaged in constitutionally protected conduct; (2) that DentaQuest USA's adverse action caused their injury and would likely chill a person of ordinary firmness from continuing to engage in criticism and filing legal actions; and (3) that the adverse action was motivated at least in part as a response to Plaintiffs' exercise of their First Amendment rights. Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 399 (6th Cir. 2010).

Here, Plaintiffs filed two civil actions against DentaQuest USA's affiliates that resulted in confidential settlement agreements and the payment of monies to Plaintiff Dr. Snodgrasss in at least one of those actions. There are fundamental constitutional rights of access to courts under the First Amendment to the Constitution. Bounds v. Smith, 430 U.S. 817 (1977).[2] Thus, Plaintiffs' prior filings of actions against DentaQuest USA's affiliates qualify as protected activity under the First Amendment.

Further, Plaintiffs' criticism of DentaQuest USA's affiliates' operation of TennCare's dental network is protected by the First Amendment. See Waters v. Churchill, 511 U.S. 661, 668 (1994) ("To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the

---

[2] This right also is recognized under the Privileges and Immunities Clause of Article III and the Due Process Clause of the Fourteenth Amendment. Cale v. Johnson, 861 F.2d 943, 949-50 (6th Cir. 1988); see also Riley v. Overton, No. 94-2072, 57 F.3d 1070, 1995 WL 355667 (6th Cir. June 13, 1995).

interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"(quoting Connick v. Myers, 461 U.S. 138, 142 (1983))).

As to the adverse action, the termination or disqualification of Plaintiffs in the form of new and initial eligibility requirements for a dental services provider is the type of adverse action that would deter a reasonable person from criticizing the entities that manage the system and determine eligibility requirements for continued participation in the program. The seriousness of such conduct is reflected in the allegation that Plaintiffs' criticism led to a criminal investigation of Dr. Snodgrass. Aside from the two legal actions, as a result of its non-renewal, Snodgrass-King has undergone significant layoffs affecting Plaintiffs' employees. According to Plaintiffs, their other long term employees allegedly have joined other firms in light of DentaQuest USA's decision. These alleged consequences are of a nature that would discourage a reasonable person from criticizing the operation of the TennCare dental network.

As to DentaQuest USA's motivation, DentaQuest USA notes that its affiliates are separate entities. DentaQuest USA also contends that Plaintiffs' protected conduct occurred years prior to the new eligibility requirement and, thus, is too remote in time to create an inference of retaliatory conduct. DentaQuest USA cites the previous legal action against Doral Dental as filed in February 2008, almost six years before DentaQuest USA's formation of the new network. Additionally, Dr. Snodgrass last publicly criticized Delta Dental in June 2003, more than ten years before DentaQuest USA notified Plaintiffs that they would not be included in the new dental network. (Docket Entry No. 1, Complaint at ¶ 40). DentaQuest USA also argues that over three years elapsed between Plaintiffs' filing of its action against DentaQuest Tennessee, in March 2010, and DentaQuest USA's

decision not to include Plaintiffs in the newly-formed dental network, of which Plaintiffs were notified on December 15, 2013.

In DentaQuest USA's view, the three-year delay between the allegedly-constitutionally protected speech and the allegedly adverse action is too long to allow an inference of retaliation. According to DentaQuest USA, the lack of temporal proximity, along with Plaintiffs' alleged failure to plead other facts to support causation on their claim of retaliation, mandates dismissal of Plaintiffs' claim.

In Dixon v. Gonzales, 481 F.3d 324 (6th Cir. 2007), the Sixth Circuit stated that, to establish causation on this type of claim:

> [A] plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997) (quoting Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted)). The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity. Avery, 104 F.3d at 861.

Id. at 333. There, the Court observed that "a mere lapse in time in between the protected activity and the [adverse action] does not inevitably foreclose a finding of causality." Id. at 335 (noting that a ten-year gap in time is not, alone, dispositive of the causation requirement for a retaliation claim).

Moreover, in the Sixth Circuit, temporal proximity is not the exclusive method to prove a motive to retaliate:

> [I]t is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case . . . The element of causation, which necessarily involves an inquiry into the motives of [the defendant], is highly context-specific. When there may be valid reasons why the

> adverse . . . action was not taken immediately, the absence of
> immediacy between the cause and effect does not disprove causation.

Id. at 335 (quoting Porter v. California Dep't of Corrections., 419 F.3d 885, 895 (9th Cir. 2005)

(describing any per se rule requiring temporal proximity as "unrealistically simplistic")). Thus,

absent proof of temporal proximity, other circumstantial evidence can establish causation. See

Spencer v. City of Catlettsburg, 506 Fed. Appx. 392 (6th Cir. 2012).

Here, the time lapse between the 2011 settlement of Plaintiffs' second lawsuit and

DentaQuest USA's 2013 exclusion of Plaintiffs must be evaluated in the context of the parties' prior

dealings. Given the nature of the parties' encounters, in which two legal actions were filed by

Plaintiffs against DentaQuest USA's affiliates, including one action that resulted in the payment of

compensation, as well as the earlier state criminal investigation, the Court concludes that these

alleged facts give rise to plausible inferences of residual hostilities between the parties. As in

Umbehr, the Court declines to allow a legal distinction in corporate form to decide this issue at the

pleading stage. 518 U.S. at 678-80. This issue of corporate separateness is more appropriately

addressed through a motion for summary judgment after a reasonable time for discovery. Thus, the

Court concludes that the factual allegations of the parties' history of disputes and Plaintiffs' total

disqualification from the TennCare dental provider network constitute a material factual distinction

from Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008), DiCarlo v. Potter, 358

F.3d 408, 421 (6th Cir. 2004), and Snodgrass v. Tennessee Dept. of Finance and Admin., No.

3:10–0282, 2010 WL 4007218, *4-6 (M. D. Tenn. October 12, 2010).[3]

---

[3]In Snodgrass, the plaintiff neither asserted an alternative proof of causation nor cited the
Sixth Circuit decisions analyzed here that causation can be proved by methods other than temporal
proximity, as Plaintiffs have done here.

## 2. Plaintiffs' Equal Protection Claims

Plaintiffs' equal protection claims are two-fold: first Plaintiffs contend that DentaQuest USA's selective enforcement of the MLR constitutes an intentional policy of disparate treatment against a "class of one." Second, Plaintiffs contend that DentaQuest USA's decision to exclude Plaintiffs lacks any rational basis and is premised on animus and ill will held toward Plaintiffs since approximately 1998. (Docket Entry No. 1, Complaint at ¶ 81). DentaQuest USA contends that Plaintiffs have not alleged that they were the only multi-location provider not included in the provider network or that other multi-location providers were treated more favorably. In addition, DentaQuest USA argues that the MLR provision of DentaQuest USA's contract, established by the State, enjoys a legal presumption of validity that Plaintiffs' factual allegations do not overcome.

Of the multiple theories of liability under the Equal Protection Clause, Plaintiffs' first theory is that DentaQuest USA engaged in discrimination against Plaintiffs, who assert themselves to be a "class of one" based upon the parties' historical relationship. In <u>Engquist v. Oregon Dep't of Agric.</u>, a public employee asserted a class-of-one equal protection claim, arguing that:

> "the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class. She reasons that in <u>Olech</u>, supra, we recognized in the regulatory context a similar class-of-one theory of equal protection; . . . that the Equal Protection Clause protects individuals, not classes; . . . that the Clause proscribes 'discrimination arising not only from a legislative act but also from the conduct of an administrative official' . . . and that the Constitution applies to the State not only when it acts as regulator, but also when it acts as employer."

553 U.S. 591, 597 (2008) (citing <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 563-64 (2000).

Yet, in sum, the <u>Engquist</u> Court concluded that: "our traditional view of the core concern of the

Equal Protection Clause as a shield against arbitrary classifications, combined with unique

considerations applicable when the government acts as employer as opposed to sovereign, lead us

to conclude that the class-of-one theory of equal protection does not apply in the public employment

context." <u>Id.</u> at 598.

Because the Supreme Court's decisions on public employees were the predicate for the

holding in <u>Umbehr</u>, establishing a public contractor's First Amendment right to be free from

retaliation, <u>supra</u> at 11-13, at least two Circuits have held that <u>Engquist</u> applies to bar class-of-one

claims by public contractors. See <u>Srail v. Village of Lisle</u>, 588 F.3d 940, 945 (7th Cir. 2009);

<u>Douglas Asphalt Co. v. Qore, Inc.</u>, 541 F.3d 1269, 1273-75 (11th Cir. 2008); <u>see also</u> <u>Intralot, Inc.</u>

<u>v. McCaffrey</u>, No. 1:11–cv–08046, 2012 WL 4361451 at *4-5 (N.D. Ill. Sept. 21, 2012). Given the

reasoning of <u>Olech</u>, <u>Umbehr</u> and <u>Engquist</u>, this Court concludes that Plaintiffs' class-of-one equal

protection claim must be dismissed.

Plaintiffs' second equal protection claim cites <u>Woodpointe Inn Assocs. L.P. v. City of Harper</u>

<u>Woods</u>, No. 93-2266, 1995 WL 94760 at *1-2 (6th Cir. March 07, 1995), to contend that the MLR

lacks a rational basis as a legitimate governmental purpose and, thus, discriminates against Plaintiffs.

In <u>Woodpointe</u>, the Sixth Circuit explained that:

> "Where there is no allegation that a fundamental right has been infringed upon or that Appellants belong to a suspect class, the Defendant's actions are subject to a rational basis test. Governmental entities are accorded wide latitude in regulation of their local economies.

> In order to prevail on an equal protection claim under § 1983, the Appellants must establish that they were the victims of intentional or purposeful discrimination. In the instant case, Appellants fail to bring forth any relevant evidence that Appellees intentionally discriminated against them."

Id. at *2-3 (internal citations omitted).

As the Sixth Circuit later explained in 37712, Inc. v. Ohio Dep't of Liquor Control, 113 F.3d 614 (6th Cir. 1997):

> [O]rdinary enactments which do not especially impair the interests of members of any suspect or quasi-suspect class, and do not inordinately burden the exercise of anyone's fundamental rights (such as those statutes at issue sub judice), are tested under the least demanding equal protection standard, namely the "rational relationship" inquiry, whereby legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, such as the Ohio local option statutes in controversy, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes. The burden upon a party seeking to overturn a legislative enactment for irrationally discriminating between groups under the equal protection clause is an extremely heavy one. As in the analogous substantive due process analysis developed above, an enactment subject to "rational relationship" equal protection review must be sustained if any conceivable basis rationally supports it.

Id. at 621-22 (internal quotations omitted).

DentaQuest USA cites TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783 (6th Cir. 2005), as articulating the governing standard for this claim. Yet, under Olech, Plaintiffs need only allege facts that they were intentionally treated differently from others similarly situated and that there is no rational basis for such treatment. 528 U.S. at 564.

Although DentaQuest USA argues that the MLR provision was set by the State, Plaintiffs cite DentaQuest USA's contract and its Multiple-Locations Restriction that provides, in pertinent part, as follows:

> [N]o entity owning or operating multiple practice locations nor any individual provider nor group of providers operating multiple practice locations, may be credentialed by the Contractor at more than one location at the time of the initial credentialing by the Contractor. . . The requirement of one initial location may be waived, at the sole discretion of the Contractor, only for providers in good standing who are current TennCare providers, with a proven record of delivery of quality dental care, at the time of Contract start date.

(Docket entry No. 1-1, TennCare-DentaQuest Contract at 39). An arguable interpretation of this language is that the State allows DentaQuest USA to waive any restriction on Multi-Location providers. Yet, DentaQuest USA's argument that the MLR was not a factor in the exclusion of Plaintiffs from the network is undermined by the letters to Plaintiffs from DentaQuest USA and the State, referring to the MLR for Plaintiffs' exclusion.

In any event, whatever presumption attaches to the new MLR restriction, construing Plaintiffs' factual allegations in a light most favorable to Plaintiffs, as required on this type of motion, the Court concludes that, given Plaintiff Snodgrass-King's longstanding participation in the TennCare dental provider network, the number of TennCare patients that Snodgrass-King served, and the specialization and diversification of Snodgrass-King's dental services, the Plaintiffs' contention that the MLR lacks a legitimate rational governmental purpose, particularly given the parties' extensive history of disputes, is plausible. Moreover, the MLR restriction applies only to the initial credentialing process and, thus, allows a post-initial credentialing of MLR providers. As to DentaQuest USA's reliance on TriHealth, the Court concludes that the circumstances here are

21

factually distinguishable from <u>TriHealth</u>, where the Sixth Circuit found simply a "consumer's choice" of suppliers with which the governmental entity elected to contract.

### 3. Plaintiffs' claim based on 42 U.S.C. § 1396u-2

Plaintiffs also contend that DentaQuest USA violated 42 U.S.C. § 1396u-2, which provides as follows:

> A Medicaid managed care organization shall not discriminate with respect to participation, reimbursement, or indemnification as to any provider who is acting within the scope of the provider's license or certification under applicable State law, solely on the basis of such license or certification. This paragraph shall not be construed to prohibit an organization from including providers only to the extent necessary to meet the needs of the organization's enrollees or from establishing any measure designed to maintain quality and control costs consistent with the responsibilities of the organization.

42 U.S.C. § 1396u-2(b)(7). The Medicaid implementing regulations require that "provider selection policies and procedures . . . must not discriminate against particular providers that serve high-risk populations or specialize in conditions that require costly treatment." 42 C.F.R. § 438.214(c).

To be sure, the statutory text makes clear that Section 1396u-2 does not create a federal guarantee or right to participation in the TennCare dental provider network. Yet, Plaintiffs allege that they serve high-risk populations and specialize in conditions that require costly treatment, and that this was among the bases for DentaQuest USA's decision to exclude Plaintiff Snodgrass-King from the TennCare dental provider network. To that extent, Section 1396u-2(b)(7) creates an enforceable right under the factors established in <u>Blessing v. Freestone</u>, 520 U.S. 329, 340-41 (1997), as the statutory language addresses the protection of individual providers, provides clear standards for judicial enforcement, and is couched in mandatory, rather than precatory, terms.

Accordingly, assuming, as the Court must at this stage of the litigation, Plaintiffs are correct that they serve high-risk populations or those with costly treatment, the Court concludes that Plaintiffs have sufficiently pled a violation of 42 U.S.C. § 1396u-2.

### 4. Plaintiffs' Procedural Due Process Claim

In analyzing a procedural due process claim, the Court first "determine[s] whether plaintiffs have a property interest that entitles them to due process protection." Leary v. Daeschner, 228 F.3d 729, 741 (6th Cir. 2000) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)). These property interests are created and defined by state law, not by the Constitution. Id. (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). "Second, if the plaintiffs have such an interest, this court must then determine 'what process is due,'" that presents a question of federal law. Id. at 742 (quoting Loudermill, 470 U.S. at 541).

For their property interest, Plaintiffs cite Tenn. Code Ann. § 71-5-118 as a state law that creates a constitutionally-protected property interest for dental providers that desire to remain in the TennCare network. This statute provides as follows:

> (a) The commissioner of finance and administration has the authority to enter into contracts with qualified vendors to provide to eligible recipients medical assistance allowed under § 71-5-107. The commissioner has the authority to terminate or suspend existing contracts with providers, to refuse to enter into contracts with providers, and to recover any payments incorrectly paid if the commissioner finds that such actions will further the purpose of this section. **Any action against such provider shall be treated as a contested case in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5. If a hearing is requested by the provider, it shall be held prior to the imposition of any of the sanctions of this subsection (a), except that upon a finding by the commissioner that the public health, safety, or welfare imperatively requires emergency action, these sanctions may be imposed pending an opportunity for the provider to request a prompt hearing.** Furthermore, the commissioner has the

right to set off any money incorrectly paid against any claim for money submitted by the provider pending an opportunity for a hearing. Grounds for action against providers under this subsection (a) include, but are not limited to, the following:

(1) Violation of the terms of the contract;

(2) Violation of any provision of this part or the rules promulgated pursuant to this part;

(3) Billing for medical assistance that was not delivered;

(4) Provision of medical assistance that is not medically necessary or justified;

(5) Provision of medical assistance of a quality that is below professionally recognized standards;

(6) Revocation or suspension of a provider's professional license or other disciplinary action by the agency regulating the profession of the provider; and

(7) Failure to produce records, upon request, by authorized representatives of the commissioner as necessary to substantiate the medical assistance for which claims have been submitted.

(b) Without regard to any other civil or criminal liability that might attach, by operation of this section or any other law, to an enrollee or applicant's action in obtaining medical assistance or any assistance under this part, to which such person is not entitled, the bureau of TennCare shall have an administrative remedy for the recovery of the amount of any medical assistance benefits or payments improperly paid as a result of any misrepresentation made by such person, to the extent that such amount has not otherwise been recovered by the bureau. The bureau shall also have a right to recover in such administrative proceedings its reasonable costs and attorneys' fees, as well as interest on the amount owed by the person, calculated from the date that medical assistance was improperly paid. Any action against such person shall be treated as a contested case in accordance with the Uniform Administrative Procedures Act. In an administrative action under this subsection (b), the bureau shall show that the amount sought to be recovered was paid in the form of medical assistance as a result of material misrepresentation by the person

against whom recovery is sought, but the bureau need not show that such misrepresentation was intentional or fraudulent.

(c) The bureau of TennCare shall report annually in writing to the criminal justice committee of the house of representatives and the judiciary committee of the senate regarding its collection activities of the estate recovery provisions of this chapter.

(d) All applicants for medical assistance under this part, and all applicants for reverification of eligibility to receive such assistance, shall receive a warning, in easily readable language, regarding the state recovery provisions, as well as the administrative, civil and criminal liability provisions of this chapter.

(emphasis added).

Plaintiffs contend that this statute satisfies their burden to "point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of [the defendant] to rescind the benefit." Med Corp., Inc. v. City of Lima, 296 F.3d 404, 410 (6th Cir. 2002). Plaintiffs assert that the TDFA Commissioner's discretion to take action against providers is expressly limited to furthering the interests of TennCare. See Brook Park Entertainment, Inc. v. Taft, 951 F.2d 710, 715 (6th Cir. 1991) (noting that "[w]hile the Ohio revocation provision does not state that a license can only be revoked for cause, the notice, hearing, and appeal provisions would be pointless unless the legislature intended there to be some reason for revocation.").

In addition to that language, the Court views the underscored language in Tenn. Code Ann. § 71-5-118(a), requiring notice and an opportunity to be heard prior to loss of participation in the TennCare network, as comparable to the limiting provisions in Brook Park Entertainment. For these reasons, the Court concludes that Plaintiffs have sufficiently pled a protected property interest. Med Corp, 296 F.3d at 410.

25

DentaQuest USA contends that Tenn. Code Ann. § 71-5-118 is solely a sanctions provision and that it does not create any property right to be considered as a provider of medical services to TennCare recipients. DentaQuest USA cites <u>Latimer v. Robinson</u>, where the Sixth Circuit upheld the dismissal of a procedural due process claim of general dentists who would no longer be reimbursed for orthodontic services to Tennessee's Medicaid enrollees, absent extenuating circumstances, after TennCare changed its policy. No. 04-5828, 2005 WL 1513103 (6th Cir. June 21, 2005). As the Sixth Circuit stated in <u>Latimer,</u> "the lack of a cognizable property interest is exemplified by Plaintiffs' concession that the TennCare program has the legal right to completely exclude all dentists from the program." <u>Id.</u> at *2. Yet, the Sixth Circuit also explained that those plaintiffs had failed to identify any "regulation or policy . . . that limits TennCare's discretion to adopt a policy that denies reimbursement to general dentists for orthodontic services they provide to TennCare enrollees." <u>Id.</u> For the reasons stated earlier, the Court deems the underscored language of Tenn. Code Ann. § 71-5-118(a), requiring notice and an opportunity to be heard **prior** to loss of participation in the TennCare network, as comparable to the limiting provisions in <u>Brook Park Entertainment</u> and, therefore, distinguishable from <u>Latimer.</u>

### 5. DentaQuest USA's Indispensable Party Contention

As to Defendant's motion to dismiss for Plaintiffs' failure to join State officials as parties, Federal Rule of Civil Procedure 19(a) provides that an absent party is necessary only if:

> (A) in that person's absence, **the court cannot accord complete relief among existing parties**; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in **the person's absence may:**
> (i) **as a practical matter impair or impede the person's ability to protect the interest;** or

26

> (ii) **leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations** because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added).

The factors to consider on a Rule 19 motion are whether the absent party is necessary to decide the issues and to award relief and whether equity and good conscience require joinder. School Dist. of the City of Pontiac v. Secretary of the United States Dept. of Educ., 584 F.3d 253, 264 (6th Cir. 2009) (en banc) (quoting Kickapoo Tribe v. Babbitt, 43 F.3d 1491, 1494 (D.C. Cir. 1995)). Rule 19 relief is limited to instances where the absence of the cited party will result in serious prejudice. Wright, Miller & Kane, Federal Practice and Procedure § 1609 (3d ed. 2001) (citing multiple authorities). In the Sixth Circuit, the issue of complete relief under Rule 19 is decided based upon the existing parties. City of Pontiac, 584 F.3d at 265. The moving party bears the burden of demonstrating that dismissal is required by Rule 19. Watson ex rel. Estate of Simon v. Herenton, No. 04-2400B, 2005 WL 2177002, *5 (W.D. Tenn. Sept. 8, 2005).

The Court concludes that three reasons exist to warrant denial of DentaQuest USA's Rule 19 motion to dismiss. First, in the prior dismissal of the named State Defendants, DentaQuest USA did not object to their dismissal on the grounds that the State Defendants were indispensable parties under Rule 19. Second, in the TennCare letter to Plaintiffs regarding the non-renewal of Plaintiffs' participation in the TennCare dental provider network, the State officials stated that they did not have any role in that decision. (Docket Entry No. 1-4, January 27, 2014 Letter). Third, as stated earlier, DentaQuest USA's contract contains a provision that would authorize DentaQuest USA to admit a dental provider with multiple locations. Fourth, in addition to compensatory and punitive damages, Plaintiffs seek injunctive and declaratory relief to restore Plaintiffs' participation in the TennCare

27

dental network that the State officials delegated to DentaQuest USA to determine. For the same reason, DentaQuest USA's reliance on <u>Glancy v. Taubman Centers, Inc.</u>, 373 F.3d 656 (6th Cir. 2003), is misplaced. There, the Sixth Circuit concluded that absent shareholders were necessary parties under Rule 19(a) for a claim of injunctive relief. Here, the requested injunctive relief is to restore Plaintiffs to the TennCare dental network, and that authority is vested in DentaQuest USA.

### 6. Plaintiffs' State Law Claims

Plaintiffs assert several state law claims, including that, through the DentaQuest Contract, the Commissioner has impermissibly sub-delegated and abdicated its authority to a private party, DentaQuest, in violation of Article Two, Section Nine of the Tennessee Constitution and Tenn. Code Ann. § 71-5-118. (Docket Entry No. 1, Complaint at ¶¶ 111, 118). Plaintiffs also assert state-law claims for breach of contract and violation of the duty of good faith and fair dealing, alleging that DentaQuest USA is contractually bound by the settlement agreement into which it entered with DentaQuest Tennessee in an earlier action filed in this Court. Because these state law claims are based upon important state laws on the administration of state government, the Court exercises its discretion to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### C. Conclusion

For these collective reasons, the Court concludes that DentaQuest USA's motions to dismiss are granted in part and denied in part.

An appropriate Order is filed herewith.

**ENTERED** this the _12th_ day of January, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge