IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SNODGRASS-KING PEDIATRIC )
DENTAL ASSOCIATES, P.C. and )
DAVID J. SNODGRASS, D.D.S., )
           )     Case No. 3:14-cv-0654
      Plaintiffs, )
v. )
           )
DENTAQUEST USA INSURANCE CO. )     JUDGE HAYNES
INC.; *et al.*, )     MAJISTRATE JUDGE BROWN
           )
      Defendants. )

### DentaQuest USA Insurance Co., Inc.'s
### Memorandum of Law in Support of Motion for Summary Judgment

Respectfully submitted,

*s/Russell B. Morgan*
Russell B. Morgan (No. 20218)
Ty E. Howard (No. 26132)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-2311 – Telephone
(615) 252-6311 – Facsimile
rmorgan@babc.com

*Attorneys for DentaQuest USA Insurance Co., Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................... 2

    A. TennCare's Dental Program ................................................................. 2

    B. The 2013 Contract Adds New Risk-Sharing Provisions ...................... 2

    C. The Network-Building Process ............................................................. 3

    D. Plaintiffs are Not Invited to Join the Network ..................................... 4

III. LEGAL STANDARD ..................................................................................... 4

IV. ARGUMENT ................................................................................................. 5

    A. Plaintiffs Have Failed to Establish State Action Because the Challenged Conduct—DentaQuest USA's Not Inviting Plaintiffs to Join the Provider Network—Cannot be Attributed to the State .......................................... 5

        1. The public-function test ................................................................ 6

        2. The state-compulsion test ............................................................ 7

        3. The symbiotic-relationship or nexus test ................................... 8

            a. The State did not participate in or review the challenged action .. 10

            b. DentaQuest USA exercised professional judgment and discretion unrelated to state guidelines or rules ............................................. 11

            c. The 2013 Contract's risk-sharing and other explicit terms make DentaQuest USA entirely independent of the State ...................... 12

    B. Plaintiffs Have Failed to Demonstrate a Violation of a Right Secured by the Constitution or Federal Law ............................................................ 14

        1. Plaintiffs have failed to establish an Equal Protection violation .............. 14

        2. Plaintiffs have failed to establish retaliation for exercising their First Amendment rights ................................................................. 16

        3. Plaintiffs have failed to establish a procedural due process claim ........... 17

        4. Plaintiffs have failed to establish a deprivation of federal rights based on 42 U.S.C. § 1396u-2 ................................................................. 19

    C. If Any Claims Survive, the Damages Must Still Be Narrowed ............................ 21

        1. Plaintiffs are not entitled to speculative damages for the potential extension period of the 2013 Contract ....................................... 21

        2. Plaintiffs are not entitled to punitive damages ......................... 23

        3. Plaintiffs are not entitled to injunctive relief ........................... 24

V. CONCLUSION .............................................................................................. 24

**DentaQuest USA Insurance Co., Inc.'s**
**Memorandum of Law in Support of Motion for Summary Judgment**

Pursuant to Fed. R. Civ. P. 56, defendant DentaQuest USA Insurance Co., Inc. ("DentaQuest USA") submits this Memorandum in Support of its Motion for Summary Judgment.

## I.     INTRODUCTION

In 2013, DentaQuest USA became TennCare's dental-benefits manager ("DBM"). In that role, it was required to build a quality and cost-efficient network of dental providers large enough to provide sufficient access to TennCare members. In forming the network, DentaQuest USA determined that practices with multiple locations should be set aside unless they became necessary to meet access requirements in particular geographic regions. Large group practices with multiple locations make access difficult to measure and cause extra administrative costs. DentaQuest USA's decision caused David Snodgrass, DDS and Snodgrass-King Pediatric Dental Associates, P.C. ("Snodgrass-King") (collectively, "Plaintiffs"), a large group practice with multiple locations in Middle Tennessee, to not be invited into the TennCare network. In response, Plaintiffs filed this action, alleging under 42 U.S.C. § 1983 that DentaQuest USA's decision violated several of their rights secured by the Constitution or federal law.

Plaintiffs' claims fail for two fundamental reasons. First, because DentaQuest USA's network-building decision does not constitute state action, it cannot be attributed to the State and cannot support Plaintiffs' claims. Second, even if there were state action, Plaintiffs' underlying claims rely on conjecture and innuendo—not facts—and therefore cannot prevent summary judgment. Accordingly, the Court should grant DentaQuest USA's motion in its entirety.

1

## II. FACTUAL BACKGROUND

### A. TennCare's Dental Program

TennCare is the State of Tennessee's Medicaid program. (Statement of Undisputed Facts ("SUF") ¶ 2). The program offers, among other benefits, dental coverage for its members who are under the age of 21. (SUF ¶ 6). In 2002, the State carved out the dental program from the larger TennCare program and began contracting with a DBM to administer it. (SUF ¶ 7). To select a DBM, the State would periodically issue requests for proposal ("RFPs"), and prospective contractors would respond through a competitive-bidding process. The winning DBM would be awarded the TennCare contract. (SUF ¶ 8).

On February 1, 2013, the State issued an RFP. (SUF ¶ 15). DentaQuest USA, an insurance company and DBM, submitted the winning proposal and ultimately signed a contract with TennCare in early May 2013 ("2013 Contract") (SUF ¶¶ 1, 18). Although this was DentaQuest USA's first TennCare contract, its corporate affiliate, Doral Dental of Tennessee, LLC—purchased by DentaQuest USA's corporate parent, DentaQuest, LLC, in 2004—had been TennCare's DBM from 2002 to 2010. (SUF ¶ 19).

### B. The 2013 Contract Adds New Risk-Sharing Provisions

Before 2013, TennCare-DBM contracts were administrative service contracts that paid the DBM a fixed per-member-per-month fee to administer the dental program. (SUF ¶¶ 9-10). The DBM was only required to be a third-party administrator (SUF ¶ 11), and TennCare remained fully responsible for all claims and program costs (SUF ¶ 12). The program's performance did not affect the DBM's compensation. (SUF ¶ 12).

In 2013, the contract changed significantly by adding risk-sharing provisions. (SUF ¶ 21). Under those new provisions, DentaQuest USA would incur up to 50% of program losses suffered up to a maximum of $8 million or, if contract requirements were otherwise met, it would share in

2

50% of program cost savings up to a maximum of $8 million (SUF ¶ 22). Further reflecting the new risk-sharing component, the flat per-member-per-month administrative fee was reduced from $0.455 to $0.30, and DentaQuest USA was required to be licensed as a risk-bearing entity with protections against insolvency. (SUF ¶¶ 23-27).

Because of these risk-sharing provisions, particularly the risk of incurring an $8 million loss, DentaQuest USA had total control over network-building decisions. (SUF ¶¶ 27, 37-38). By contrast, TennCare had no role in network building and could not overrule DentaQuest USA's decisions. (SUF ¶¶ 32-33). In fact, had DentaQuest USA lacked full control, it could not have entered the 2013 Contract under the same risk-sharing provisions. (SUF ¶ 38). The 2013 Contract's other terms reinforce this control, providing that DentaQuest USA was not required to contract with any providers (a) beyond those necessary to meet the network's needs (SUF ¶ 29); (b) just because the provider previously was a TennCare provider (SUF ¶ 30); or (c) if DentaQuest USA thought such a contract would adversely affect the network (SUF ¶ 31).

### C.      The Network-Building Process

Under the 2013 Contract, DentaQuest USA was required to build a quality, cost-effective network of dental providers that was large enough to provide adequate access to TennCare members. (SUF ¶ 47). Unlike some states, Tennessee does not require a DBM to include in the provider network every willing provider who applies for admission. (SUF ¶ 4). As a result, the DBM can build the network it believes best offers quality, access, and cost efficiency. (SUF ¶ 5).

DentaQuest USA's network-building process had two phases: First, it selected providers with whom DentaQuest USA, based on various criteria, preferred to include in the network. Second, it matched those preferred providers with the "pool" of providers who had been separately validated by TennCare and were therefore eligible to be included in the network. (SUF ¶ 67). If, after matching the originally preferred providers against TennCare's pool of providers, there

3

were insufficient providers to ensure adequate access to TennCare members, then DentaQuest USA would add additional providers (who were originally not on the preferred list) to reach the necessary access levels. (SUF ¶¶ 84-86).

Throughout this process, DentaQuest USA and TennCare acted consistently with the 2013 Contract's terms. DentaQuest USA—largely through two employees, Cheryl Polmatier and Barry Major—built the network without any participation or review by TennCare. (SUF ¶¶ 32-33, 58, 66). Ultimately, DentaQuest USA formed a provider network that met all of the requirements for network adequacy, access, and quality of care under the 2013 Contract, as confirmed by a federally mandated review by an independent third party (SUF ¶¶ 94-95).

### D. Plaintiffs are Not Invited to Join the Network

When DentaQuest USA became the new DBM in 2013, Plaintiffs, like all providers seeking to be invited into the new network, submitted their revalidation application to TennCare. After revalidation, Plaintiffs were within the TennCare pool of dentists eligible to be invited into the network. (SUF ¶ 88). Through DentaQuest USA's separate process of selecting preferred providers, however, Snodgrass-King was set aside because it was a large group practice with more than three offices. (SUF ¶89). When DentaQuest USA performed its geo-access analysis, it determined that the areas where Snodgrass-King operated—generally the populous areas in and near Davidson County—did not have additional access needs. (SUF ¶¶ 90-91). As a result, Snodgrass-King was not needed to meet access requirements, and therefore Plaintiffs were not invited to join the provider network (SUF ¶ 93).

## III. LEGAL STANDARD

Under Fed. R. Civ. 56(c), summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." To prevail, the moving party must show the absence of a genuine issue of material fact to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For its part, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to make an adequate showing on an essential element, the moving party is entitled to summary judgment as a matter of law. *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999) (citing *Celotex,* 477 U.S. at 322-3).

To avoid summary judgment, the non-moving party must "go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citations omitted). In that regard, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)). Likewise, evidence that is "merely colorable" or "not significantly probative" will not prevent summary judgment. *Anderson*, 477 U.S. at 249.

## IV.   ARGUMENT

### A.   Plaintiffs Have Failed to Establish State Action Because the Challenged Conduct—DentaQuest USA's Not Inviting Plaintiffs to Join the Provider Network—Cannot be Attributed to the State

All of Plaintiffs' claims proceed under 42 U.S.C. § 1983, which requires that they establish two elements: (1) a deprivation of a right secured under the Constitution or federal law and (2) that the deprivation was committed under color of state law. *American Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). As a threshold matter, all of Plaintiffs' claims fail because DentaQuest USA's action was not taken under color of state law.

5

"Under color of state law" is treated and analyzed the same as "state action" under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 928-29 (1982); *Paige v. Conyer*, 614 F.3d 273, 278 (6th Cir. 2010). As such, § 1983 "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Sullivan,* 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Because "[c]areful adherence to the 'state action' requirement . . . avoids imposing on the State, its agencies or officials[] responsibility for conduct for which they cannot fairly be blamed[,]" courts have required that the conduct causing the deprivation be "fairly attributable to the State." *Lugar*, 457 U.S. at 936-37. If a defendant's action is not state action, the inquiry ends. *Crowder v. Conlan*, 740 F.2d 447, 449 (6th Cir. 1984) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

The state-action analysis "begins by identifying the 'specific conduct of which the plaintiff complains.'" *Sullivan*, 526 U.S. at 51 (quoting *Blum*, 457 U.S. at 1004). Here, the challenged action is DentaQuest USA's decision not to invite Plaintiffs into the TennCare provider network. To determine whether state action exists, courts apply three tests: the public-function test, the state-compulsion test, and the symbiotic-relationship or nexus test. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003).[1] DentaQuest USA's challenged action does not constitute state action under any of these tests.

### 1.    The public-function test

Under the public-function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Id.* [*Chapman,* 319 F.3d at 833.]

---

[1] Some Sixth Circuit panels have considered the "entwinement test," created in *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001), a separate fourth test. *See Marie v. American Red Cross*, 771 F.3d 344, 362 & n.6 (6th Cir. 2014). Whether viewed separately or as a variant of the nexus test, the entwinement test addresses whether a private entity is entwined with governmental policies or the government is entwined in the private entity's management. *Brentwood*, 531 U.S. at 296. Here, there is no contention that there were any state officials in DentaQuest USA's management, and, to the extent any other aspects of the test apply, they are analyzed as part of the nexus test in Part IV.A.3 *infra*.

6

The test is construed narrowly and has been used rarely. *Id.* at 833-34. Before invoking the public-function test, a court must conduct a historical analysis to determine whether the activity truly has been traditionally and exclusively performed by the State. *Wittstock, III v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The plaintiff bears the burden of demonstrating such historical evidence to support a finding of a public function. *See Straub v. Kilgore*, 100 Fed. App'x 379, 385 (6th Cir. 2004).

Here, there is no historical evidence that administering a dental-benefits program is traditionally and exclusively performed by the State. Courts have routinely found that similar functions do not satisfy the public-function test. *See, e.g., Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (providing mental-health services not traditional and exclusive public function); *Brown v. Thomas*, 624 F. Supp. 2d 593, 600 (E.D. Ky. 2008) (providing housing and care to involuntarily committed persons not traditional and exclusive public function). By contrast, the only activities found to satisfy this narrow test are indisputably traditional public functions. *See, e.g., Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 157-58 (1978) (elections); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-53 (1974) (eminent domain). Accordingly, DentaQuest, USA's network-building decisions cannot satisfy the public-function test.

### 2. The state-compulsion test

Similarly, the state-compulsion test does not apply. Under that test, the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2004) (internal quotations omitted). State compulsion cannot be found based on "mere approval of or acquiescence in the initiatives of a private party," *Blum v.* 457 U.S. at 1004, or by significant state funding, *see Wolotsky*, 960 F2d at 1336. Plaintiff does

7

not allege—much less offer evidence—that the State of Tennessee coerced DentaQuest USA's actions. As a result, the state-compulsion test does not apply.

### 3. The symbiotic-relationship or nexus test

Finally, under the symbiotic-relationship or nexus test, a private party's action can constitute state action when there is a "sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 1335. The nexus test is construed narrowly, and its applicability depends on the "unique facts and circumstances presented by each individual case." *Brown*, 624 F. Supp. 2d at 601. As such, it is a "necessarily fact-bound inquiry." *Lugar*, 457 U.S. at 939.

Importantly, like the state-action analysis generally, the nexus test focuses on the connection between the state and the challenged action—not the private actor. *Marie*, 771 F.3d at 363; *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir. 1983) (state must be "intimately involved in the challenged private conduct"). Thus, even when the private actor and the state have close relationship, the nexus test is not satisfied if the government was not involved in the specific action at issue. For example, in *Cornett v. Mason Volunteer Fire Co.*, 85 F.3d 628, 1996 WL 242035 (6th Cir. 1996)[2], a private corporation contracted with a township to provide fire and emergency services. When the plaintiff was suspended, she alleged it was state action because the corporation was paid by public revenues, used government property, had a government official on its board, and was audited by the government. *Id.* at *2-3. Despite those connections, the Sixth Circuit concluded that, even if the government were involved with the fire company, there was no evidence that it had anything to do with the suspension. *Id.* at *3; *see also Adams v. Vandemark*, 855 F.2d 312, 316 (6th Cir. 1988) (termination of employee by publicly funded, heavily regulat-

---

[2] Unpublished decisions are collected and attached as Exhibit 1.

8

ed non-profit not state action because ties to government played no role in termination); *Crowder,* 740 F.2d at 450-53 (denial of privileges to doctor by publicly owned hospital operated by private company not state action because state not involved in day-to-day operations).

Plaintiffs challenge DentaQuest USA's decision not to invite them into the TennCare provider network. As a preliminary matter, courts have routinely held that managed-care organizations' ("MCOs"), health-maintenance organizations' ("HMOs") and similar entities' conduct does not constitute state action. As recently as last month, a court rejected such a claim. In *Quinones v. United Health Group, Inc.*, Civ. No. 14-00497, 2015 WL 4523499 (D. Hawaii July 24, 2015), the plaintiff alleged that the administrator of Hawaii's Medicaid program improperly denied certain medical benefits. *Id.* at *1. The court dismissed the claim, finding that the administrator's conduct was not state action under the nexus test because nothing established "that the State was involved in any way in the . . . benefits decision." *Id.* at *5. The court further observed that, "[i]f contracting, funding, and regulating was (sic) sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor", a result "Congress did not intend." *Id.*

Other courts have reached a similar conclusion. *See, e.g., Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (Medicare HMO's termination of physicians not state action); *Transatlantic, LLC v. Humana, Inc.*, No. 8:13-cv-1925-17TBM, 2013 WL 3958361, at *2 (M.D. Fla. Aug. 1, 2013) (Medicare Advantage organization's termination of contract not state action); *Montelione v. United Concordia, Cos.,* No. 09-1114, 2010 WL 653928, at 4-5 (W.D. Pa. Feb. 19, 2010) (Medicaid DBM's termination of dentist not state action); *Drs. Pass & Bertherman, Inc. v. Neighborhood Health Plan of R.I.*, 31 A.3d 1263, 1270-71 (R.I. 2011) (Medicaid HMO's varying compensation to different optometrists not state action);

9

*see also New Jersey Primary Care Ass'n Inc. v. New Jersey Dep't of Human Servs.*, 722 F.3d 527, 537 (3d Cir. 2013) (summarily finding Medicaid MCOs not state actors).

Against that backdrop, DentaQuest USA's decision not to invite Plaintiffs into the network does not constitute state action under the nexus test for three related reasons: (1) the State did not jointly participate in the decision, (2) DentaQuest USA exercised its own independent network-building judgment and did not merely implement state guidelines; and (3) the 2013 Contract gives DentaQuest USA, as an independent party with substantial financial risk under the contract's risk-sharing provisions, the sole authority for network building.

### a. The State did not participate in or review the challenged action

First, when the State is not involved or jointly participating in the challenged conduct, that conduct does not constitute state action. *Cornett,* 1996 WL 242035, at *3; *Vandemark*, 855 F.2d at 316-17; *see also Brown*, 624 F. Supp. 2d at 603-04 (no state action where state had no role in alleged acts by contractor that ran day-to-day operations at state-owned facility). Similarly, when the State cannot review or overrule a private entity's action, that action cannot be attributed to the State. *See Blum*, 457 U.S. at 1010 (no state action where state could not approve or disapprove nursing home decisions).

Here, the State did not participate in, or review—or even have the ability to review—DentaQuest USA's network-building decisions. (SUF ¶¶ 28-33). Cheryl Polmatier and Barry Major both confirmed that TennCare played no role in their network building or decision not to invite Dr. Snodgrass. (SUF ¶¶ 58-59, 66). Likewise, TennCare dental director Dr. James Gillcrist indicated that neither he nor TennCare participated in DentaQuest USA's network building generally or in the decision to not invite Snodgrass-King specifically. (SUF ¶¶ 32-34). No evidence contradicts the fact that DentaQuest USA—and it alone—decided not to invite Snodgrass-King into the network, a decision that TennCare did not and could not participate in or overrule.

10

Without any participation or review by the State, the action cannot constitute State action. *Cornett*, 1996 WL 242035, at *3; *Vandemark*, 855 F.2d at 316-17.

### b. DentaQuest USA exercised professional judgment and discretion unrelated to state guidelines or rules

Second, the type of decision made by DentaQuest USA involved exercising its own professional judgment and discretion based on network-building experience, not interpreting or implementing state guidelines. Those types of decisions do not constitute state action. *Sullivan*, 526 U.S. at 52; *Blum*, 457 U.S. at 1008; *Polk Cty. v. Dodson*, 454 U.S. 312, 318-21 (1981). In *Blum*, the challenged action was a nursing home's decision to discharge Medicaid patients. The Court rejected the state-action claim, nothing that "[t]hose decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the state." *Blum*, 457 U.S. at 1008. Similarly, in *Polk County*, the challenged action was a public defender's representation of an indigent defendant. The Court again refused to find state action because "a public defender works under canons of professional responsibility that mandate his exercise of independent judgment." *Id.* at 321. And in *Sullivan*, the challenged action was an insurer's withholding of workers' compensation benefits from employees. Again, the Court found no state action because the insurer's decision turned on judgment made by private parties without standards established by the State. *Sullivan*, 526 U.S. at 52.

In this case, DentaQuest USA's network-building decisions did not involve interpreting or implementing state laws or regulations. Rather, DentaQuest USA drew upon its experience and expertise in network building and judgment regarding access needs, efficiency, and quality. (SUF ¶¶ 54-59, 77-79, 89-93). Such independent decision-making does not constitute state action. *See Sullivan*, 526 U.S. at 52; *Blum*, 457 U.S. at 1010; *Polk*, 454 U.S. at 321.

### c. The 2013 Contract's risk-sharing and other explicit terms make DentaQuest USA entirely independent of the State

Third, the 2013 Contract further establishes DentaQuest USA's complete control, and the State's complete *lack* of control, over the decisions to invite providers. As an initial matter, a contractual relationship, even accompanied by heavy regulation, does not convert a private entity into a state actor. *Rendell-Baker*, 457 U.S. at 841 (holding that private contractors' acts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Here, the 2013 Contract's terms further amplify DentaQuest USA's unilateral control. For example, Paragraph A.63 states that DentaQuest USA "is not required to contract with providers beyond the number necessary to meet the needs of the enrollees nor precluded from establishing measures that are designed to maintain quality of service and control costs and is consistent with its responsibilities to enrollees." (SUF ¶ 39). DentaQuest USA has indisputably met those standards, as attested by the network builders, TennCare, and an independent review. (SUF ¶¶ 94-95). Further still, the 2013 Contract explicitly states that DentaQuest USA is <u>not</u> required to contract with a provider "merely because the provider was a TennCare provider prior to the contract start date" (SUF ¶ 30) or "if [DentaQuest USA] believes such agreements might adversely affect the dental provider network," (SUF ¶ 31).

Equally importantly, the 2013 Contract includes a fundamental change from past TennCare-DBM contracts that further underlines DentaQuest USA's control over network decisions. Unlike earlier contracts, the 2013 Contract contains risk-sharing provisions that require DentaQuest USA to incur losses or share in savings depending on the program's performance. (SUF ¶¶ 21-22). Reflecting that change, the 2013 Contract also now requires DentaQuest USA to demonstrate to the state that it has adequate protections against insolvency and meet licensure requirements as a risk-bearing entity. (SUF ¶¶ 24-25). As a result of these changes, DentaQuest

USA is not a mere administrator of the State's program, but an independent party-in-interest whose financial success or failure is connected to the network's performance. As such, contractually and practically, DentaQuest USA has the sole authority to make network decisions, and TennCare has no mechanism to dictate or review them. (SUF ¶¶ 32-34, 37-38). Such independent and unilateral action does not constitute state action. For example, in *Drs. Pass and Bertherman*, the Rhode Island Supreme Court rejected a similar claim an HMO's decision to compensate certain doctors differently than others in Rhode Island's Medicaid program. In doing so, the court noted that the state health department "was not party to the participating provider agreements"; "had no role in selecting which providers [the HMO] would choose to contract with"; and "had no authority to direct how [the HMO] used its resources." 31 A.2d at 1270-71. That holding accords with courts' repeated conclusion that MCO-type entities do not engage in state action, *see Gonzalez-Maldonado*, 693 F.3d at 248; *Quinones*, 2015 WL 4523499, at *5; *Montelione*, 2010 WL 653928, at *4, and the same conclusion must apply here.[3]

---

[3] In addition, following *Sullivan*, the U.S. Supreme Court vacated one of the few cases to find otherwise. *See Shalala v. Grijalva*, 526 U.S. 1096 (1999) (vacating 152 F.3d 1115 (9th Cir. 1998)). Tellingly, the Court vacated the judgment "for consideration in light of [*Sullivan*], *Sections 4001 and 4002* of the Balanced Budget Act of 1997 . . . and the regulations of the Secretary of Health and Human Services implementing those provisions" *Id.* (emphasis added). Sections 4001-02 address revisions to Medicare Part C that authorize the Secretary of Health and Human Services to enter into "risk sharing" contracts with HMOs.

Separately, none of this authority is undermined by Judge Echols's preliminary finding in an earlier case involving Dr. Snodgrass. In that case, Dr. Snodgrass sued Doral Dental of Tennessee, LLC, claiming that Doral's alleged actions were attributable to the State. The case was settled out of court but not before Doral raised a state-action argument on a motion to dismiss. In denying that motion, Judge Echols found that Dr. Snodgrass had adequately alleged a sufficient nexus between the state and Doral to prevent dismissal. *Snodgrass v. Doral Dental of Tennessee*, No. 3:08-0107, 2008 WL 2718911, at *4 (M.D. Tenn. July 10, 2008). That finding is immaterial to this case for several reasons: First, it was at a preliminary stage and based only on the sufficiency of allegations—not developed facts at the summary-judgment stage, as here. Second, the contract at issue was materially different than the 2013 Contract due to the latter's risk-sharing provisions, which make DentaQuest USA an independent party-in-interest and exposed to tangible harm based on its network-building decisions. Finally, *Doral Dental* misapplies the nexus test. The court states that the "specificity of the [DBM] contract" indicates that the DBM would administer the program in "the manner in which it had been administered by the state" previously. *Id.* at *4. But that analysis fails to address the *sine qua non* of the nexus test, namely, whether the state was sufficiently involved in the challenged action to convert it into state action. *See Cornett*, 1996 WL 242035, at *3; *Vandemark*, 855 F.2d at 316-17; *Brown*, 624 F. Supp. 2d at 603-604.

## B.    Plaintiffs Have Failed to Demonstrate a Violation of a Right Secured by the Constitution or Federal Law

While Plaintiffs' failure to establish any state action is fatal to their claims, those claims also fail because there has been no underlying constitutional or federal-law violation. Plaintiffs raise four claims based upon: (1) an Equal Protection violation; (2) First Amendment retaliation; (3) a procedural due-process violation; and (4) a deprivation of federal rights based on a Medicaid statute. Each claim fails.

### 1.    Plaintiffs have failed to establish an Equal Protection violation

"The Equal Protection Clause of the Fourteenth Amendment 'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006)). Plaintiffs claim that DentaQuest USA has discriminated against otherwise network-eligible dentists or dental practices that have multiple locations in favor of those otherwise eligible dentists and dental practices that do not operate multiple locations. (Compl. ¶¶ 77-81). Because Plaintiffs' claims do not implicate a fundamental right or involve a suspect class, they are subject to rational-basis review. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 693 (6th Cir. 2014).

Rational-basis review is a "highly deferential" standard. *Id.* at 694.  A plaintiff bears the burden of showing that the government's action is not rationally related to any legitimate public interest, and the government's actions enjoy a "strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). Government action amounts to a constitutional violation "only if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Liberty Coins*, 748 F.3d at 694. To overcome this high bar, a plaintiff must either "negativ[e] every conceivable basis which might

14

support the government action" or "demonstrat[e] that the challenged government action was motivated by animus or ill-will." *Davis,* 679 F.3d at 438. The government, however, "has no obligation to produce evidence to sustain the rationality of its action," and its decision may "be based on rational speculation unsupported by evidence or empirical data." *Liberty Coins,* 748 F.3d at 694.

Here, Plaintiffs' claim fails for multiple reasons. As a threshold matter, there is no dispute that some providers in Plaintiffs' classification—otherwise network-eligible dentists or dental practices that have multiple locations—were in fact invited into the network. (Compl ¶ 28). But even if that were not so, there are several established sound bases for not inviting multiple location practices. A provider network must offer adequate access to its membership, and such access is a specific requirement under the 2013 Contract. (SUF ¶ 47). Measuring access, however, is far more complex with a multiple-location practice because the number of dentists at any given location varies by the day. (SUF ¶¶ 43, 77-79). For example, if a practice has ten dentists and five locations, there is no automated way to calculate the number of dentists—and therefore the level of access—at a given location since it could be evenly spread (i.e., 2-2-2-2-2), unevenly spread (e.g., 5-2-1-1-1), or completely variable by the day. As such, a DBM cannot determine with any predictability if an access requirement has been met. (SUF ¶ 78). In addition, multiple location practices increase credentialing costs because a dentist must be credentialed (and periodically updated) for each individual location, thus multiplying the administrative costs by the number of locations. (SUF ¶ 79). Given limited resources and cost-savings concerns, it is plainly rational for the government to prefer practices without multiple locations, particularly given that multiple-location practices can still be invited if access needs demand it. *See, e.g., Moser Const.Co., Inc. v. Cleveland Mun. Sch. Dist.*, 2008 WL 4445112, at *3 (N.D. Ohio Sep. 29,

2008) (preference for union contractors over non-union contractors rationally related to legitimate government interest); *see also Council 31 of the Am. Fed'n of State, Cnty. Mun. Emps. v. Quinn*, 680 F.3d 875, 887 (7th Cir. 2012) ("Instituting cost-savings measures is unquestionably a legitimate governmental interest.")

### 2. Plaintiffs have failed to establish retaliation for exercising their First Amendment rights

To prevail on their retaliation claim, Plaintiffs must establish that (1) they were engaged in constitutionally protected conduct; (2) DentaQuest USA's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated at least in part by Plaintiffs' protected conduct. *See Wurzelbacher v. Jones-Kelley*, 675 F. 3d 580, 583 (6th Cir. 2012) (quoting *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2012)). Here, Plaintiffs allege two different types of constitutionally protected conduct: (1) speaking out against DentaQuest's administration of TennCare (Compl. ¶¶ 31-40, 57-59, 89); and (2) filing two lawsuits against Doral Dental of Tennessee, LLC, a previous DBM. (Compl. ¶¶ 46-49, 55-56, 89). They further alleged that DentaQuest USA's refusal to invite them to the new TennCare network was an adverse action that would deter a person of ordinary firmness from continuing to engage in those protected activities. But no evidence—beyond Plaintiffs' mere conjecture—links DentaQuest USA's refusal to invite them into the 2013 network to Plaintiffs' past protected activity.

For example, neither Polmatier nor Major knew that Dr. Snodgrass had "spoken out" against DentaQuest USA or Doral. (SUF ¶¶ 64-65). Similarly, neither had any familiarity with the lawsuits that Snodgrass had previously filed. (SUF ¶¶ 61-63). In fact, there is no evidence to support that Dr. Snodgrass's lawsuits or speech motivated DentaQuest USA's decision not to invite Snodgrass-King into the network. Plaintiffs instead ask the Court to assume that, because

some DentaQuest USA employees (notably <u>not</u> senior management) previously worked at Doral Dental, those employees harbored some long-simmering animus toward Dr. Snodgrass, and (years later) retaliated against him by not inviting him into the 2013 network. Such conjecture cannot withstand summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008); *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006).

### 3.   Plaintiffs have failed to establish a procedural due process claim

To establish a procedural due process claim, Plaintiffs must establish that (1) they have a life, liberty or property interest protected by the Fourteenth Amendment; (2) they were deprived of that property interest within the meaning of the Due Process Clause; and (3) DentaQuest USA did not afford them adequate procedural rights before depriving them of their protected property interest. *Wedgewood Ltd. P'ship v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349-50 (6th Cir. 2010). Plaintiffs' claim fails because they cannot establish a constitutionally protected property interest.

Boiled to its essence, Plaintiffs' claimed property interest is participating in the TennCare network. (Compl. ¶ 96). But that claim is foreclosed by *Latimer v. Robinson*, Case No. 04-5828, 2005 WL 1513103 (6th Cir. June 21, 2005). In *Latimer*, plaintiff dentists alleged that they were deprived of due process when TennCare refused to reimburse them for orthodontic services that their licenses authorized them to perform. *Id.* at *1. Rejecting that claim, the Sixth Circuit held that "[a] license to perform dental services … does not translate into an entitlement to receive a particular business opportunity from the TennCare program." *Id; see also Necula v. Conroy*, 13 Fed. App'x. 24, 26 (2d Cir. 2001) (finding that state Medicaid provider-physician "has no property right to continued enrollment as a qualified provider").

Recognizing this obstacle, Plaintiffs attempt to repackage their claim, alleging that their "prior contracts with Delta [Dental] . . . represented constitutionally protected property interests." (Compl. ¶ 96). But the new wrapping cannot change the package's contents. The relief they seek

is "restoring" their "membership in the TennCare dental provider network" (Compl. 23, Prayer 4(b))—relief not available through a due-process claim. *Latimer*, 2005 WL 1513103, at *1; *Necula*, 13 Fed. App'x at 26; *see also Painter v. City of Cincinnati*, No. C-1-05-26, 2006 WL 2815296 at *4 (S.D. Ohio Sept. 28, 2006) (defendant who met eligibility requirements for permit did not have property interest when standards for granting permit were discretionary). Moreover, any prior contract with Delta Dental is irrelevant to Plaintiffs' right to participate in the current dental network. Delta Dental's TennCare contract had ended, and its agreement with Plaintiffs had been terminated. DentaQuest USA was creating a new network to which no provider belonged yet, as evidenced by TennCare's revalidation process and DentaQuest USA's entirely new network building. (SUF ¶¶ 20, 30, 47, 82, 88, 93). Finally, if Plaintiffs' reliance on their 2010 Contract with Delta Dental were correct, every provider with an old, since-terminated contract would not just have a property interest, but a *perpetual* property interest. Such specious reasoning conflicts both with the 2013 Contract's explicit statement that DentaQuest was not required to contract with a provider "merely because the provider was a TennCare provider prior to the contract start date" (SUF ¶ 30) and with *Latimer*.

Plaintiffs try to buttress this repackaged claim by citing Tenn. Code Ann. § 71-5-118, but again they miss the mark. Section 71-5-118(a), entitled "Provider contracts; actions against provider; fraud," states that, if a provider requests a hearing, the hearing shall be "held prior to the imposition of any of the sanctions of this subsection (a)." As the title and context of § 71-5-118 indicate, however, the section is targeted at sanctions of existing providers. Here, Plaintiffs were not sanctioned, were not an existing provider, and never lost their participation in the DentaQuest USA-formed TennCare network at all. Rather, when the network was formed, they applied but were not invited. (SUF ¶¶ 88-93). Moreover, the relevant TennCare administrative rules explicit-

ly state that a provider has no right to appeal a "refusal to contract with the provider." Tenn. Comp. R. & Regs. 1200-13-19-.01(2)(a). If Plaintiffs' argument were correct, every dentist in the state would have a right to appeal a decision not to contract with him or her—an untenable result flatly inconsistent with Tennessee's lack of any-willing-provider requirement.[45]

### 4. Plaintiffs have failed to establish a deprivation of federal rights based on 42 U.S.C. § 1396u-2

Finally, Plaintiffs claim that DentaQuest USA did not invite them into the 2013 TennCare network because they served high-risk populations and specialized in conditions that require costly treatment. They premise this claim on 42 U.S.C. § 1396u-2, which broadly prohibits a Medicaid managed-care organization from discriminating against a provider who is acting within the scope of his or her license. That same statute, however, states immediately thereafter that it "shall not be construed to prohibit an organization from including providers only to the extent necessary to meet the needs of the organization's enrollees or from establishing any measure designed to maintain quality and control costs consistent with the responsibilities of the organization." *See* 42 U.S.C. § 1396u-2. Acknowledging this language, Plaintiffs in previous briefing pointed the Court to the implementing regulation's language in 42 CFR § 438.214(c), which included certain non-discrimination provisions. Plaintiffs maintained that that language created an enforceable right in the underlying statute, § 1396u-2. Specifically, Plaintiffs quoted § 438.214(c) as follows:

> "provider selection policies and procedures . . . must not discriminate against particular providers that serve high-risk populations or specialize in conditions that require costly treatment."

---

4

[5] Alternatively, if Plaintiffs are truly asserting a property interest in their past contract with Delta Dental, then their relief lies with Delta Dental, not with a different DBM, under a different contract, during a different time period. It would appear, however, that even that claim would be foreclosed since Plaintiffs have never alleged that they lost their TennCare participation while Delta Dental was the DBM.

19

(Pls.' Resp. in Opp. to DentaQuest USA's Mot. to Dismiss at 24 (citing 42 C.F.R. § 438.214(c)).

Tellingly, however, Plaintiffs' selective quotation omitted the language that eviscerates their arguments. Stated in full, 42 CFR § 438.214(c) provides:

> (c) Nondiscrimination. MCO, PIHP, and PAHP provider selection policies and procedures, **consistent with § 438.12**, must not discriminate against particular providers that serve high-risk populations or specialize in conditions that require costly treatment."

42 C.F.R. § 438.214(c) (emphasis added). The bolded phrase, omitted by ellipses in Plaintiffs' version, incorporates Section 438.12, which states that:

> (a) General rules. (2) In all contracts with health care professionals, an MCO, PIHP, or PAHP must comply with the requirements specified in §438.214.

> (b) Construction. **Paragraph (a) of this section may not be construed** to – (1) **Require the MCO, PIHP, or PAHP to contract with providers beyond the number necessary to meet the needs of its enrollees**; (2) Preclude the MCO, PIHP, or PAHP from using different reimbursement amounts for different specialties or for different practitioner in the same specialty group; or (3) **Preclude the MCO, PIHP, or PAHP from establishing measures that are designed to maintain quality of services and control costs and are consistent with its responsibilities to enrollees**.

42 C.F.R. § 438.12 (a)(2), (b)(1) and (3) (emphasis added). In other words, the implementing regulation contains the <u>same</u> limiting construction as § 1396u-2, namely, that its nondiscrimination prohibition may not be construed as requiring the MCO from contracting with providers beyond those necessary to meet the needs of enrollees or from establishing cost-control measures. Thus, contrary to Plaintiffs' assertions, the statute and its implementing regulations do not create a federal guarantee or right to participate in the TennCare dental provider network.

Second, Plaintiffs' claim cannot survive summary judgment even if their (incorrect) reading of the law did apply. Plaintiffs have failed to develop any evidence to suggest that their practice serves a materially different patient population than other TennCare providers. Indeed, all or nearly all TennCare dental providers serve high-risk populations or patients with costly treat-

ments. (SUF ¶ 96). And equally fatal, Plaintiffs have adduced no evidence that DentaQuest USA's decision not to invite them into the network was in anyway motivated by their treating high-risk populations or specializing in costly treatments.

### C. If Any Claims Survive, the Damages Must Still Be Narrowed

Even if some of Plaintiffs' claims survive summary judgment, Plaintiffs are not entitled to speculative lost-profit damages based on a speculative contract extension, punitive damages, or injunctive relief where money damages have been adequately quantified. Accordingly, even if some of Plaintiffs' claims were to survive, Plaintiffs' damages must be substantially narrowed.

### 1. Plaintiffs are not entitled to speculative damages for the potential extension period of the 2013 Contract

Section 1983 entitles plaintiffs to seek compensation "for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). The purpose of compensatory damages "is to compensate the injured party for the costs of the injury." *Pembaur v. Cincinnati*, 882 F.2d 1101, 1104 (6th Cir. 1989) (citing *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). Accordingly, "no compensatory damages may be awarded absent proof of actual injury." *Pembaur*, 882 F.2d at 1104 (quoting *Stachura*, 477 U.S. at 309-10).

Damages in a § 1983 case are "ordinarily determined according to principles derived from the common law of torts." *Pembaur*, 882 F.2d at 1104. Thus, a court must determine "whether there is a common law analog to the constitutional tort being alleged." *Id*. at 1105. The Sixth Circuit has recognized that § 1983 does not "provide adequate guidance to determine the measure of damages available in an action for a violation of a claimant's civil rights." *Tinch v. City of Dayton*, Nos. 94-3436, 94-3516, 1996 WL 77445, at *1 (6th Cir. 1996); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 598 (6th Cir. 2006). Accordingly, 42 U.S.C. § 1988 directs the court to turn to the common law of the forum state. *Tinch*, 1996 WL 77445, at *1.

21

Under Tennessee law, "[a]n injured party may recover lost anticipated profits when their nature and occurrence have been established with *reasonable certainty*." *Ingram Barge Co. v. Century Aluminum of West Virginia, Inc.*, No. 10-00110, 2012 WL 3150666, at \*10 (M.D. Tenn. Aug. 1, 2012) (citing *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 47 (Tenn. Ct. App. 2005) (emphasis added). As a general rule, "damages are not permitted which are remote and speculative in nature." *Grantham & Mann, Inc. v. Amer. Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987) (citing *Agric. Servs. Ass'n v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1072 (6th Cir. 1977); *Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 543 S.W.2d 593, 598-99 (Tenn. Ct. App. 1975)).

Here, Plaintiffs are not entitled to any compensatory damages that extend beyond DentaQuest USA's current three-year contract term because such damages are purely speculative. DentaQuest USA holds a three-year contract with the State of Tennessee to serve as the DBM until September 30, 2016. (SUF ¶ 20). Although the State has the right to extend the contract for additional one-year terms, such extension is not guaranteed. (SUF ¶¶ 45-46). Indeed, the last TennCare-DBM contract with Delta Dental was not extended beyond the original three-year term. (SUF ¶¶ 13-15, 46). Thus, no one can state with reasonable certainty that the State will exercise its right to extend DentaQuest USA's contract.

Significantly, Tennessee courts have rejected lost-profit damages claims based on similar speculation about renewals. In *B & L Corp. v. Thomas & Thordgren, Inc.*, the court found that defendants had intentionally induced the breach of plaintiff's contract with a third party. 162 S.W.3d 189, 221 (Tenn. Ct. App. 2004). The plaintiff's contract with the third party could, however, be renewed yearly at the third party's option. *See id.* In reversing the trial court, the Court of Appeals concluded that there was "no evidence that [the third party] would have chosen to

renew their contract" with the plaintiff, and thus the court was "unwilling to conclude or assume" that the contract would have renewed. *Id*. As in *B & L Corp.*, there is no evidence here that the State will renew its TennCare contract with DentaQuest USA beyond the current term ending on September 30, 2016. Accordingly, any lost-profit damages based on the renewal periods are speculative and should not be awarded.

### 2. Plaintiffs are not entitled to punitive damages

Punitive damages are appropriate under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Punitive damages may be granted "only on a showing of the requisite intent." *Stachura*, 477 U.S. at 306 n.9. "[A] key feature of punitive damages [is] that they are never awarded as of right, no matter how egregious the defendant's conduct. Rather, once the plaintiff proves that the defendant's conduct triggers consideration of punitive damages, the factfinder makes the discretionary moral judgment whether or not to award punitive damages." *Zamiara*, 788 F.3d at 217 (international citations omitted).

Here, nothing in the record suggests that DentaQuest USA possessed the requisite intent in its conduct towards Plaintiffs to support an award of punitive damages. To the contrary, testimony consistently shows that it had a lawful basis for not inviting Snodgrass-King into the network— namely that, as part of the network-building process, Snodgrass-King was set aside as a large, multiple location provider. Because no additional access needs were identified in the areas where Snodgrass-King practiced, it was not invited into the network. (SUF ¶¶ 92-93). While Polmatier and Major identified Dr. Snodgrass early on as a provider who they did not want to invite into the network (SUF ¶¶ 56-59), their preliminary view was based sound network-building concerns (SUF ¶¶ 54-59), was consistent with past practice (SUF ¶ 60), and was not a

23

final determination (SUF ¶ 62). Most importantly, nothing in that early identification suggests an improper—much less unconstitutional—basis for that decision. In short, no evidence suggests that DentaQuest USA acted with the requisite "evil motive or intent, or . . . reckless or callous indifference" toward Plaintiffs' federally protected rights by not inviting Snodgrass-King into the TennCare dental network. *King*, 788 F.3d at 216. Accordingly, punitive damages are foreclosed.

### 3. Plaintiffs are not entitled to injunctive relief

To obtain permanent injunctive relief, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Chute v. Odom*, 2013 WL 4587903 (M.D. Tenn. 2013) (citing *eBay, Inc. v. MercExchange, LLC*, 547 US 388, 391 (2006)). Here, Plaintiffs fail the first and second elements. Because they assert a damages claim and have quantified it through their expert report on lost profits, there is no basis for injunctive relief. Accordingly, the court should enter summary judgment on their claim for reinstatement.

## V. CONCLUSION

Plaintiffs' claims fail because DentaQuest USA's decision not to invite Plaintiffs into the new TennCare provider network is not state action. Every relevant feature of that decision—from the 2013 Contract's risk-sharing and other terms, to DentaQuest USA's full discretion and independent authority for network decisions, to TennCare's complete lack of participation or oversight in network decisions—demonstrates that it does not constitute state action under *Sullivan* and the many cases concluding that MCO-type organizations are not state actors. Moreover, the lack of state action aside, Plaintiffs' claims fail because no evidence supports the alleged under-

lying constitutional and legal claims. For those reasons, the Court should grant DentaQuest

USA's motion and enter summary judgment in its favor.

Respectfully Submitted,

_s/Russell B. Morgan_
Russell B. Morgan (No. 20218)
Ty E. Howard (No. 26132)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-2311 – Telephone
(615) 252-6311 – Facsimile
rmorgan@babc.com

*Attorneys for DentaQuest USA Insurance Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served via the Court's electronic filing system to:

Robert Walker
Joseph Welborn
Erin Palmer Polly
Gibeault C. Creson
BUTLER SNOW
The Pinnacle at Symphony Place
150 3rd Avenue South, Suite 1600
Nashville, TN 37201

Counsel for Plaintiffs

on this 17th day of August, 2015.

*s/Russell B. Morgan*