IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SNODGRASS-KING PEDIATRIC DENTAL ASSOCIATES, P.C. and DAVID J. SNODGRASS, D.D.S., <br><br> Plaintiffs, <br><br> v. <br><br> DENTAQUEST USA INSURANCE CO., INC., <br><br> Defendant. | Civil Action No. 3:14-CV-654 <br> Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Joe B. Brown <br> Jury Demand |

## DECLARATION OF JOSEPH F. WELBORN, III

I, Joseph F. Welborn, III, being of sound mind aware of 28 US.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am over eighteen years of age and have personal knowledge of the facts set forth in this declaration.

2. I am an attorney licensed to practice law in Tennessee and have been so licensed since 1991. I am a partner at Butler Snow LLP ("Butler Snow") and am counsel of record for Plaintiffs Snodgrass-King Pediatric Dental Associates, P.C. and David J. Snodgrass, D.D.S. in this action. I have been heavily involved in the case at every stage since I first entered an appearance in 2014.

3. In addition, Erin Palmer Polly, a partner at Butler Snow, Beau Creson, an associate at Butler Snow, and Paula Graves, an assistant at Butler Snow, primarily assisted in the representation of Plaintiffs in this action and did so since its initial investigation through trial.

Among several things, Ms. Polly and Mr. Creson participated in pleadings preparation, written discovery, document production, depositions, research, and the seven day jury trial of this matter. Ms. Graves participated in the representation of the Plaintiffs by, among other things, document production and/or preparation of documents for exhibits at depositions and trial.

4. Ms. Polly has been licensed to practice law in Tennessee since 2002. Mr. Creson has been licensed to practice law in Tennessee since 2013.

5. Robert J. Walker, a partner at Butler Snow, also provided critical oversight and guidance throughout the case from the initial meeting between the parties through trial. Mr. Walker has been licensed to practice law in Tennessee since 1968.

6. Lauren Patten, John C. Hayworth, and Jason W. Callen, partners at Butler Snow, Paige M. Ayers, April N. Knox, and Diana M. Comes, associates at Butler Snow, and Scott W. Sims, formerly a partner at Walker, Tipps & Malone PLC ("WTM"), also provided legal assistance during the case, but their involvement was discrete and limited to instances where the primary lawyers on the case were overburdened with other tasks for the case or where a particular lawyer outside of the primary team possessed skills that would allow for better, faster, and/or more cost-effective completion of a particular task. The tasks completed by these individuals included researching legal issues, assisting in the preparation of Plaintiffs' pleadings, motions, and responsive pleadings filed in this action, and witness interviews.

7. Ms. Patten has been licensed to practice law in Tennessee since 2008. Mr. Hayworth has been licensed to practice law in Tennessee since 1993. Mr. Callen has been licensed to practice law in Tennessee since 2007 and in Illinois since 2003. Ms. Ayres has been licensed to practice law in Tennessee since 2015. Ms. Knox has been licensed to practice law in

Tennessee since 2014. Ms. Comes has been licensed to practice law in Tennessee since 2011. Mr. Sims has been licensed to practice law in Tennessee since 1995.

8. Plaintiffs first received notice that they were being terminated from the dental provider network by DentaQuest in December 2013.

9. Around that time, Plaintiffs hired the law firm of WTM, which would later become part of Butler Snow, to investigate and research whether they had a valid legal claim based upon this exclusion.

10. On January 3, 2014, during this investigation, Plaintiffs requested in writing that DentaQuest place them back into the network and permit them to treat those low-income and special-needs children who they previously had treated, but DentaQuest refused.

11. With no cooperation from DentaQuest, and based upon the results of the investigation and research of Plaintiffs' counsel, Plaintiffs filed suit against DentaQuest on March 11, 2014.

12. Over the course of the lawsuit, the parties engaged in extensive written discovery. Plaintiffs' counsel served and responded to multiple sets of written discovery requests and exchanged tens of thousands of documents. Indeed, Plaintiffs reviewed and produced approximately 12,000 pages of documents while DentaQuest produced approximately 27,000 pages of documents that had to be reviewed by Plaintiffs' counsel, many of them extremely voluminous and complicated spreadsheets that could not be printed because of their sheer volume and complexity.

13. The parties also engaged in extensive deposition discovery. Plaintiffs' counsel prepared for and deposed ten current and former DentaQuest employees (one twice) and had to

3

travel across the country to take these depositions in such locations as Boston, Massachusetts; Chicago, Illinois; Milwaukee, Wisconsin; and Tallahassee, Florida. For its part, DentaQuest deposed seven individuals, primarily in Nashville, Tennessee, but also in Fort Worth, Texas. For each of these seven depositions, counsel for Plaintiffs either defended the deposition, which required witness preparation, or examined the witness as well.

14. It was through their review of the massive document production and through these multiple depositions that Plaintiffs acquired important evidence to help them establish, among other things:

- that DentaQuest determined to exclude Plaintiffs from the dental provider network as early as December 2012;

- that DentaQuest's decision to exclude Plaintiffs from the network was motivated by Dr. Snodgrass's public criticisms of and prior lawsuits against the company;

- that the State of Tennessee was complicit in the plan and substantially encouraged DentaQuest to exclude Plaintiffs from the network; and

- that Plaintiffs should have been included in the network under DentaQuest's provider selection methodology.

15. While certain of Plaintiffs' claims were dismissed over the course of the lawsuit, the information obtained during written discovery and in depositions was all focused on the same general premise that supported Plaintiffs' First Amendment, Equal Protection, *and* Procedural Due Process claims – DentaQuest excluded Plaintiffs from the network not for any legitimate, legal reason, but rather for the arbitrary, unlawful reason that it had a retaliatory animus against Dr. Snodgrass for his past public criticisms and lawsuits against the DentaQuest corporate family.

4

16.     Along with the foregoing, Plaintiffs' counsel retained and worked with two expert witnesses in order to support their factual allegations and their damages model.

17.     Plaintiffs retained Christopher M. Lovin, CPA / ABV / CFF, CFE ("Lovin"), an expert in data analysis, who testified at trial that Plaintiffs should not have been excluded from the dental provider network under any of the measures that were used by DentaQuest.

18.     Plaintiffs also retained Jerry W. Faulkner, CPA, a damages expert who determined that Snodgrass-King sustained approximately $9.2 million in lost profits because of DentaQuest's unlawful exclusion of Plaintiffs from the network.

19.     Counsel for Plaintiffs worked extensively with each of these experts throughout the preparation of their various reports as well as during their preparation for trial and subsequent testimony.

20.     Plaintiffs' counsel also engaged in extensive briefing in response to DentaQuest's efforts, which ultimately failed, to preclude each of these expert witnesses from testifying at trial, as well as their own mostly-successful motion to exclude the expert testimony of Timothy S. Martinez, D.M.D., who had offered opinions on behalf of DentaQuest.

21.     Plaintiffs' counsel also engaged in complex and time-consuming motion practice throughout the course of this lawsuit, including in response to two motions to dismiss, cross-motions for summary judgment, discovery-related motions, the aforementioned motions that sought to preclude Plaintiffs' expert witnesses from testifying, and motions to reconsider various decisions made by Magistrate Judge Joe B. Brown.

22. The pre-trial briefing also was extensive, with Plaintiffs filing eight motions in limine as well as responses to most of DentaQuest's thirteen motions in limine and an omnibus motion in limine that covered nine separate topics.

23. The briefing continued throughout the trial itself, with both parties briefing and arguing various evidentiary issues even through the last day of trial.

24. The trial in this matter spanned seven days, involved the presentation of multiple witnesses and arguments (both evidentiary and legal), and required the assistance of four lawyers on behalf of Plaintiffs.

25. On November 22, 2016, the jury rendered a verdict in favor of the Plaintiffs on their First Amendment claim, awarding them $7,400,000 in compensatory damages as well as $14,800,000 in punitive damages.

26. This was a total victory for the Plaintiffs, who not only recouped millions of dollars as compensatory damages for the harm caused them by DentaQuest, but also created a significant, symbolic deterrent for those defendants who would think to tread upon the First Amendment rights of American citizens in the future.

27. Through December 12, 2016, Plaintiffs' counsel have expended 5,591.6 hours in the prosecution of this case, amounting to $1,612,233.50 in attorneys' fees at the rates applicable for each of the above attorneys. Plaintiffs have also incurred costs and expenses of $144,580.02 in this action. This declaration will be supplemented to include additional fees and expenses incurred by Plaintiffs since December 12, 2016.

28. I am familiar with the legal fees and expenses charged in civil litigation in Tennessee, including at Butler Snow, as I have participated in numerous cases in both state and

6

Case 3:14-cv-00654    Document 420    Filed 12/20/16    Page 6 of 9 PageID #: 12444

federal court and have been involved in fee petitions and awards. I am also generally familiar with the hourly rates charged by several of the smaller and larger law firms in Nashville.

29. The fees and expenses incurred by Plaintiffs in this action are reasonable considering, among other things, the amounts Plaintiff sought to recover against DentaQuest, the legal grounds upon which Plaintiffs' complaint was based, the complexity of the case, the substantial number of documents produced by both parties, the discovery conducted, the necessary motion practice, the amount of trial preparation, the length of the jury trial, and the favorable results obtained by Plaintiffs.

30. The time and labor required in this case was particularly extensive and was substantially augmented by the difficulty of numerous factual and legal issues that were central to the case. Additionally, the successful prosecution of the case, which relied heavily on circumstantial evidence and testimony from DentaQuest's own employees, required a high level of skill and experience from Plaintiffs' counsel in order to be successful.

31. All of the hours expended and costs and expenses incurred were necessary to adequately prosecute the case. All of the costs and expenses actually were charged to and either have been or will be paid by Plaintiffs.

32. Finally, the legal services, hourly rates, and expenses charged to the Plaintiffs in this action are in line with those charged by attorneys having similar background, education, experience, and ability in Nashville and Tennessee. Such fees and expenses are reasonable and were necessarily incurred by Plaintiffs in this action.

33. Detailed time and expense records maintained by both WTM and Butler Snow evidence the time spent by WTM/Butler Snow attorneys and support staff on this matter, the

7

hourly rates charged, and the costs and expenses incurred. The hourly rates charged to Plaintiffs for myself, Ms. Polly, Mr. Walker, and Mr. Creson at WTM and Butler Snow were the rates we typically charged clients at the time we took on the representation, but have been below the rates that we typically charge clients since that time. The hourly rates charged for Mr. Hayworth, Mr. Callen, Mr. Sims, Ms. Patten, Ms. Ayers, Ms. Knox, and Ms. Graves were at or below the rates we typically charge for clients at WTM/Butler Snow. True and correct copies of such detailed time and expense records are attached hereto as **Exhibit 1**. In addition, some bills for third party expenses incurred in this action that were sent directly to Plaintiffs for payment are attached as **Exhibit 2**.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the above statement is true and correct this 19th day of December, 2016.

Joseph F. Welborn, III

34277743v1

8

## **CERTIFICATE OF SERVICE**

      I certify that a true and exact copy of the foregoing has been served via U. S. Mail, first-class postage prepaid, this December 20, 2016, on the following:

Russell B. Morgan
Ty E. Howard
R. Brandon Bundren
Tara S. Sarosiek
Connor M. Blair
Jeffrey W. Sheehan
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 1600
P.O. Box 340025
Nashville, Tennessee 37203

                                                            /s/ Beau C. Creson